1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                         **SOUTHERN DIVISION**

11   ULTIMAX CEMENT MANUFACTURING )        SA CV 02-578 AHS (ANx)
     CORP., et al.,              )
12                               )
                                 )         FINDINGS OF FACT AND
13            Plaintiffs,        )         CONCLUSIONS OF LAW IN SUPPORT
                                 )         OF ORDER DENYING MOTION FOR
14        v.                     )         EXCEPTIONAL CASE AND
                                 )         ATTORNEYS' FEES; ORDER DENYING
15   CTS CEMENT MANUFACTURING    )         DEFENDANTS' MOTION FOR
     CORP., et al.,              )         EXCEPTIONAL CASE AND
16                               )         ATTORNEYS' FEES
                                 )
17            Defendants.        )
     _____)

18

19                    **PROCEDURAL BACKGROUND**

20        The above motion was heard on April 28, 2008, and the

21   Court, having considered the papers in support of the motion for

22   exceptional case and attorneys' fees (the "Motion") filed by

23   defendants CTS Cement Manufacturing Corp., et al. ("defendants"),

24   the declarations and exhibits submitted therewith and the reply

25   papers, the opposition papers submitted by plaintiffs Ultimax

26   Cement Manufacturing Corp. ("Ultimax"), Hassan Kunbargi

27   ("Kunbargi"), KA Group, Heartland Cement Sales Company ("HCSC")

28   (collectively, "Ultimax, et al." or "plaintiffs"), Foley &

Lardner ("Foley"), and Saied Kashani ("Kashani"), and the declarations, exhibits, and objections submitted therewith, and all pleadings on file in connection with this motion, the Court makes the following findings of fact and conclusions of law.

**I.**

**FINDINGS OF FACT**

1.    Plaintiffs to this action are Ultimax Cement Manufacturing Corporation, Hassan Kunbargi, KA Group, and Heartland Cement.

2.    Defendant and counterclaimant is CTS Cement Manufacturing Corporation and additional defendants are Rapid Set Products Co., CTS Bulk Terminals Co., Chem-Comp Systems, Inc., Edward K. Rice, Jack Goodman, Paragon Building Products, Inc., Lawrence B. Collins, Blue Daisy Cement Products, Inc., Kurt Caillier, A&A Ready Mixed Concrete, Inc., Ryan Vanderhook, Sr., Short Load Concrete, Inc., Sir-Mix Concrete Products, Inc., White Cap Industries, Inc., Grupo de Cementos Chihuahua, and The Quikrete Companies.

3.    Kunbargi and Ed Rice ("Rice"), Kunbargi's former mentor and employer at CTS Cement Manufacturing Corp. ("CTS"), ended their relationship on unsatisfactory terms.

4.    In October 2001, Kunbargi approached Foley to represent him in this case.  Peter Aronson ("Aronson"), a senior partner in Foley's Los Angeles office, now deceased, was assigned to the case.  Kashani, an associate in Foley's Los Angeles office, was assigned to the case because of his degree in chemistry.  From October 2001 to June 2002, Foley conducted its pre-suit investigation.

5.    As part of this pre-suit investigation, Foley engaged outside scientific experts including Larry Adams ("Adams"), an experienced cement chemist known in the field. Adams has consulted for both Rice, with CTS, and Kunbargi, with Ultimax.

6.    With Adams' assistance, patent attorneys at Foley reviewed the patent and researched the prior art, including prior scientific papers.  Foley's review led it to conclude that the relevant claims had validity.  Prior to filing suit, plaintiffs did not conduct an analysis on defendants' clinker.

7.    Adams disregarded numerous errors contained in plaintiffs' patents that eventually rendered plaintiffs' Claims as to Crystals X and Y invalid for lack of adequate written description.

8.    On June 13, 2002, plaintiffs filed their original complaint in this case.  On November 27, 2002, defendants' outside counsel advised plaintiffs and their counsel that they were pursuing what defendants regarded as invalid patents. Defendants advised plaintiffs they would seek attorneys' fees once they prevailed.

9.    On April 1, 2003, the Court appointed Dr. Frieder Seible ("Seible") as an expert under Fed. R. Civ. P. 706. Seible's findings were mixed and were not fully in favor of plaintiffs' or defendants' positions.

10.    Seible found that "given the context in which 'anhydride' is used in patent '556, Claims 9-11, it is not unreasonable to assume the author meant anhydrite and anhydride." Though Seible opined compressive strength in the '556 patent was

3

undefined, the Court ruled that compressive strength was sufficiently well-defined for purposes of the '556 and '534 patents.

11.   Following Aronson's October 2003 death, Foley partner William J. Robinson ("Robinson") was assigned to the case.  Robinson is a patent litigator and member of the patent bar with 30 years experience.

12.   On December 6, 2004, the court granted motions brought by CTS for summary judgment of non-infringement and invalidity for indefiniteness with respect to the '556 patent, summary judgment of laches with respect to the '556 patent, summary judgment of invalidity with respect to the '684 patent, and summary judgment on plaintiffs' claim for misappropriation of trade secrets.

13.   In 2004, CTS did not move for summary judgment on the '534 patent for non-infringement.  Accordingly, the Court's December 6, 2004 ruling did not address non-infringement of the '534 patent.

14.   The Court's December 6, 2004 Order noted that "Defendants seek to invalidate Claims 9-11 of the '556 patent, Claim 17 of the '684 patent and Claims 10-11 of the '534 Claims. CTS argues that these Claims are indefinite because compression strength of concrete is in part determined by the test employed. The '684 and '534 patents do not state which test should be used . . ." (p. 20:18-22)  The Court ruled:  "Thus, in the context of the disputed Claims, the Court finds that the term 'compressive strength' means the ability to withstand compressive forces as reflected by the testing procedures set forth in the '556 patent

1   at 9:47-53.  The Court thus rejects defendants' motion on § 112,

2   2 grounds as to compression strength."

3          15.  Following the Court's December 6, 2004 Order,

4   Foley conducted an independent review of the remaining claims and

5   determined there was a reasonable basis to proceed.

6          16.  On January 30, 2007, plaintiffs filed a Motion to

7   Disqualify defendants' counsel Orrick, Herrington, and Sutcliffe,

8   LLP and James W. Geriak Due to Former and Continuing

9   Representation of Plaintiff Kunbargi.  On February 26, 2007, when

10  the matter was initially heard, the Court issued a tentative

11  ruling to grant the motion.  The matter was taken under

12  submission after oral argument, and on May 7, 2008, the Court

13  denied the motion.

14         17.  On May 9, 2007, plaintiffs filed an *ex parte*

15  application seeking an order certifying the Court's denial of

16  plaintiffs' attempt to disqualify defendants' lawyers for

17  interlocutory appeal.  On May 11, 2007, the Court denied

18  plaintiffs' ex parte application.

19         18.  On November 24, 2003, Kashani appeared on behalf

20  of HCSC. (Docket # 839.) The Court's docket continues to list

21  Kashani as attorney of record for HCSC.

22         19.  On February 1, 2008, Kashani stipulated to extend

23  time to file defendants' Motion for Exceptional Case and

24  Attorneys' Fees.

25         20.  On February 25, 2008, Kashani was timely served

26  with notice of defendants' Motion for Exceptional Case.

27         21.  On October 11, 2007, the Court granted withdrawal

28  of Foley from further representation of the parties Ultimax,

1    Kunbargi, and KA group. (Docket # 922.)

2         22.  Foley was not timely served with notice of

3    defendants' Motion for Exceptional Case.

4         23.  Foley was not served with notice of defendants'

5    motion for Exceptional Case until March 17, 2008, when defendants

6    filed a reply in support of the motion.  Foley had an adequate

7    opportunity to respond to defendants' motion for sanctions and

8    did so through objections and oral argument.

9                              **II.**

10                       **CONCLUSIONS OF LAW**

11   **Motion for Exceptional Case and Attorneys' Fees under 35 U.S.C. §**

12   **285 against Ultimax, et al.**

13        24.  The Patent Act provides that a court "in

14   exceptional cases may award reasonable attorney fees to the

15   prevailing party."  35 U.S.C. § 285.

16        25.  "Determination of the prevailing party is based on

17   the relation of the litigation result to the overall objective of

18   the litigation."  Brooks Furniture Mfg., Inc. v. Dutailier Int'l,

19   Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005).

20        26.  Based on its December 6, 2004 and January 24, 2008

21   Orders, the Court finds CTS the prevailing party as to

22   plaintiffs' patent infringement claims.

23        27.  Reasonable attorney fees are properly awarded

24   where the court (1) finds "clear and convincing evidence that a

25   case is exceptional" and (2) "then determine[s] in its discretion

26   whether an award for attorneys fees is justifiable."  Digeo, Inc.

27   v. Audible, Inc., 505 F.3d 1362, 1357-68 (Fed. Cir. 2007).

28        28.  "A case may be deemed exceptional when there has

been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." Brooks Furniture, 393 F.3d at 1381.

**Inequitable Conduct**

29.   To conclude that the case is exceptional due to inequitable conduct before the PTO, defendants must offer clear and convincing evidence that the conduct was material and "shows a threshold level of intent to mislead the PTO." Board of Educ. ex rel. Bd. of Trustees of Florida, 333 F.3d 1330, 1343 (Fed. Cir. 2003). "Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." Id.

30.   The Court finds no clear and convincing evidence that plaintiffs' alleged failure to provide certain information regarding past sales or Kunbargi's relationship with Ultimax's founder were intended to mislead the PTO.

31.   The Court finds no clear and convincing evidence of Ultimax or Kunbargi's intent to mislead the PTO.

32.   The Court's finding regarding inequitable conduct before the PTO weighs against finding the case exceptional.

**Litigation Misconduct**

33.   Litigation misconduct and unprofessional behavior are relevant to the award of attorney's fees, and may suffice, by themselves, to make a case exceptional. Sensonics, Inc. v.

1  Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996); Beckman

2  Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547 (Fed. Cir.

3  1989); Aptix Corp. v. Quickturn Design Sys., Inc., 269 F .3d

4  1369, 1375 (Fed. Cir. 2001).

5       34.   The Court considers plaintiffs' disqualification

6  motion and does not find it or any other actions by plaintiffs

7  evidence of litigation misconduct.

8       35.   The Court's finding regarding litigation

9  misconduct weighs against finding the case exceptional.

10 **Good Faith**

11      36.   Absent a Rule 11 violation or material

12 inappropriate conduct, attorneys' fees pursuant to section 285

13 can be imposed against a party only if "both (1) the litigation

14 is brought in subjective bad faith, and (2) the litigation is

15 objectively baseless."  Brooks Furniture, 393 F.3d at 1381

16 (citing Professional Real Estate Investors v. Columbia Pictures

17 Industries, 508 U.S. 49, 60-61, 113 S. Ct. 1920, 123 L. Ed. 2d

18 611 (1993) (defining "sham" litigation)); see also Serio-US

19 Industries, Inc. v. Plastic Recovery Technologies Corp., 459 F.3d

20 1311, 1322 (Fed. Cir. 2006)

21      37.   The assertion of infringement of a duly granted

22 patent is presumed to be made in good faith.  See Springs Willow

23 Fashions, LP v. Novo Indus., L.P., 323 F.3d 989, 999 (Fed. Cir.

24 2003).  The fact that a patent is ultimately found invalid

25 "cannot be used to bootstrap the argument" that the infringement

26 claim was asserted in bad faith, absent clear and convincing

27 evidence that plaintiffs had reason to believe that the claims

28 were invalid or not infringed.  McNeil-PPC, Inc. v. L. Perrigo

Co., 337 F.3d 1362, 1373 (Fed. Cir. 2003).

38.   Having asserted infringement claims for duly granted patents, the Court finds plaintiffs' infringement claims were presumptively brought in good faith.

39.   The Court does not find the initial suit or its continued prosecution baseless.

40.   The Court's finding regarding plaintiffs' prosecution of its claims not to have been in bad faith weighs against finding the case exceptional.

**Frivolous Litigation**

41.   To prove the litigation was frivolous, defendants must show with clear and convincing evidence that plaintiffs "'knew or, on reasonable investigation, should have known' the action was baseless." Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1330 (Fed. Cir. 2003) citing Haynes Int'l Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1993). Unlike the subjective bad faith inquiry, to find the litigation objectively baseless "does not depend on the state of mind of the plaintiff at the time that the action was commenced, but rather requires an objective assessment of the merits." Brooks Furniture, 393 F.3d 1378.

42.   An adequate pre-suit investigation of the validity of plaintiffs' claims requires only a reasonable pre-suit investigation, not a successful one. Hoffman-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1363-64 (Fed. Cir. 2000); Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1429 (Fed. Cir. 1997).

43.   The Court does not find plaintiffs knew or should have known their claims were baseless.

1    44.   The Court finds plaintiffs conducted an adequate

2    pre-suit and post-filing investigation to objectively assess the

3    validity of their claims.

4    45.   The Court's finding regarding plaintiffs'

5    objectively reasonable belief in the merits of their claims

6    weighs against finding the case exceptional.

7    **Fees Against HCSC**

8    46.   Local Rule 54-12 provides that all post judgment

9    motions must be filed and served no more than "14 days after

10   entry of judgment or other final order."  L.R. 54-12; <u>accord</u> Fed.

11   R. Civ. P. 54(2)(b).

12   47.   The Court finds HCSC, as a plaintiff represented

13   by Kashani, was a party to the February 1, 2008 stipulation to

14   extend time to file defendants' Motion for Exceptional Case and

15   Attorneys' Fees.

16   48.   The Court finds HCSC was timely noticed on

17   February 25, 2008, with defendants' Motion for Exceptional Case

18   and Attorneys' Fees.

19   49.   Having found no basis for finding the case

20   exceptional as to Ultimax, Kunbargi, or KA Group, the Court also

21   declines to find the case exceptional as to HCSC.

22   **Sanctions under 28 U.S.C. § 1927 against Foley and Kashani**

23   50.   Pursuant to 28 U.S.C. § 1927, "[a]ny attorney who

24   so multiplies the proceedings in any case unreasonably and

25   vexatiously may be required by the court to satisfy personally

26   the excess costs, expenses, and attorneys' fees reasonably

27   incurred because of such conduct."

28   51.   A district court may impose sanctions under

section 1927 only on an attorney and not a party and only upon
finding that the accused attorney acted recklessly or
subjectively in bad faith.  <u>See</u> <u>Estate of Charqualaf v. Winkler</u>,
792 F.2d 858, 860 (9th Cir. 1986).  Subjective bad faith is
present "when an attorney knowingly or recklessly raises a
frivolous argument."  <u>Estate of Charqualaf</u>, 792 F.2d at 860.

     52.  Having found the case not exceptional for lack of
clear and convincing evidence on the grounds stated above, the
Court finds no basis for imposing sanctions against Kunbargi or
Foley as plaintiffs' representatives.  For the same reasons, the
Court declines to invoke its inherent power to impose sanctions
and finds that none are warranted.

### <u>ORDER DENYING MOTION</u>

     Based on the foregoing findings of fact and conclusions
of law, the Court denies defendants' Motion for Exceptional Case
and Attorneys Fees as to Ultimax, et al., Foley, and Kashani.

     The Clerk shall serve this order on counsel for all
parties in this action.

     IT IS SO ORDERED.

     Dated:  May 28, 2008.


          **ALICEMARIE H. STOTLER**
          ALICEMARIE H. STOTLER
          CHIEF UNITED STATES DISTRICT JUDGE