James W. Geriak (State Bar No. 32871)
Kurt T. Mulville (State Bar No. 149218)
Thomas J. Gray (State Bar No. 191411)
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA  92614
Telephone:  (949) 567-6700
Facsimile:   (949) 567-6710
Emails:      jgeriak@orrick.com
             kmulville@orrick.com
             tgray@orrick.com

Richard C. Leonard (State Bar No. 48193)
LEONARD, DICKER & SCHREIBER
Limited Liability Partnership
9430 W. Olympic Blvd., Suite 400
Beverly Hills, CA  90212
Telephone:  (310) 551-1987
Facsimile:   (310) 277-8050
Email:       rleonard@ldslaw.com

Attorneys for Defendant and Counterclaimant
CTS Cement Manufacturing Corporation and Defendants
Rapid Set Products Co.; CTS Bulk Terminals Co.; Chem-Comp Systems, Inc.; Edward K. Rice; Lawrence B. Collins; Blue Daisy Cement Products, Inc.; Ryan Vanderhook, Sr.; Short Load Concrete, Inc.; Sir-Mix Concrete Products, Inc.; White Cap Industries, Inc.; Grupo Cementos de Chihuahua; and The Quikrete Companies

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ULTIMAX CEMENT MANUFACTURING CORP., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CTS CEMENT MANUFACTURING CORP., *d/b/a* CTS CEMENT MANUFACTURING CO., et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No.  SACV 02-578 AHS (ANx)<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NEW MATTER RE INVALIDITY OF U.S. PATENT NO. 6,113,684**<br><br>Date:  December 10, 2010<br>Time:  2:00 p.m.<br>Place:  Courtroom 6B<br>Judge:  Hon. Alicemarie H. Stotler<br>Complaint Filed:    June 13, 2002 |

## I.     INTRODUCTION

Our opening brief pointed out that 35 U.S.C. § 255 prohibits the introduction of new matter in a certificate of correction and explained why, under applicable law, the rewritten formula for Crystal Y in the Certificate of Correction in Patent No. 6,113,684 introduced new matter into the claims and specification. The Opposition filed by Plaintiffs attempts to sidestep this new matter issue by implicitly conceding that new matter was introduced and opts for a discussion of the law under 35 U.S.C. § 255 relating to broadening claims with a certificate of correction and the requirement that there be clearly evident support in the specification for the rewritten claims, plus an argument that the new matter was "obvious". This argument is, as we discuss below, based on misrepresentations and erroneous legal standards.

Plaintiffs' arguments with regard to 35 U.S.C. § 255 are fatally flawed because:

    1.     The Certificate of Correction broadened the claims.

    2.     The purported correction made by the inventor, Hassan Kunbargi, was not clearly evident from the specification, drawings and prosecution history of the '684 Patent. Rather, (a) the specification was amended to make it consistent with the amendments to the claims, thereby demonstrating that there was no support in the original specification and (b) as will be explained in more detail below, the purported correction involving the subtraction of one atom of oxygen from the formula for Crystal Y could have just as well have been the addition of one atom of calcium.

    3.     The statement at page 9, lines 7 and 8 of the Opposition and in paragraph 37 of the Adams' Declaration that the "total molecular weight of $(C_2S)_3(C\overline{S})_3Caf_2$ is **1003**" is **false**. The actual molecular weight for this formula for Crystal Y is 955.25. When 955.25 is divided by 38, the result is 25.1, not, as Plaintiffs would have it, 26.5.

1      4.      Plaintiffs repeatedly insist that the issue is not new matter, but "whether it [the correction] is **obvious** to one skilled in the art." This is the wrong legal standard, *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1571-72 (Fed Cir. 1997).

5.      Plaintiffs repeatedly characterize the formula for Crystal Y as it appears in the '684 Patent as a "misprint." This is false. A misprint is something printed in error not something, as here, written in purported error.

6.      The Applicant's intent is irrelevant to whether he is entitled to a Certificate of Correction.

7.      Contrary to Plaintiffs' assertion, $H_3O$ is a known composition, namely, hydronium.

## II.      ARGUMENT

### A.      The Claims Have Been Broadened.

It is plain that the claims as rewritten in the Certificate of Correction are broader than the claims as they appear in the original patent. The changes made to the claims are two in number, namely, the deletion of a calcium oxide molecule (CaO) by substituting Ca (calcium) for CaO and the addition of one fluorine or one chlorine atom. It cannot be denied that the claims as rewritten would be infringed by a composition having nine calcium oxide molecules, i.e., using cement terminology $C_9$ rather than $C_{10}$, and is broader in this respect. In addition, the claims as rewritten would be infringed by a composition having either two fluorine atoms or two chlorine atoms rather than one fluorine or one chlorine atom. Thus, the claim is broader in this respect as well. Plaintiffs advance no assertion or comparison in support of the contention made at page 12, lines 21 and 22 and paragraph 40 of the Adams' Declaration that the corrected formula is narrower than the original, but rather put forth only conclusory statements totally lacking in any support. As such, they can properly be disregarded.

Furthermore, the question of whether a claim has been broadened is a

1  question of law for the Court, *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565,
2  1575 (Fed. Cir. 1997) ("Claim construction is to be determined by the Court."). In
3  this regard, we note that the broadening of the claims in this case is similar to the
4  broadening found in *Central Admixture Pharmacy v. Advanced Cardiac Solutions*,
5  482 F.3d 1347, 1354 (Fed. Cir. 2007) where the Court held:

> "We find that these claims were broadened by the Certificate of Correction since the claims as corrected cover less-concentrated solutions which would not be covered under the original claims."

9  So it is here. The rewritten claims, as demonstrated above, cover
10 compositions which would not be covered under the original claims.

**B.     The Correction Was Not Clearly Evident From The Specification, Drawings And Prosecution Of The '684 Patent.**

13  The fact that the rewritten claims were not supported by the original
14 specification is demonstrated in spades by the fact that Kunbargi found it necessary
15 to rewrite the specification by means of the Certificate of Correction, as well as
16 rewriting the claims! This rewriting of the specification, in contravention of the
17 prohibition on new matter set forth in 35 U.S.C. § 132, demonstrates beyond any
18 shadow of a doubt that new matter was introduced into the claims which resulted in
19 a violation of 35 U.S.C. § 255. As held in *Anascape Ltd. v. Nintendo of America,*
20 *Inc.*, 601 F.3d 1333, 1338 (Fed. Cir. 2010), new matter can be introduced by
21 removing requirements or limiting language from an original specification such
22 that "description can be broadened by removing limitations" and that such removal
23 is "classical new matter." Similarly, in *Baldwin Graphic Systems, Inc. v. Siebert,*
24 *Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008) it was held that deletion from the
25 specification of references to "heat" as the way of sealing a disclosed sleeve
26 "would have broadened the patent and introduced impermissible new matter not
27 included in the initial disclosure." So it is here with regard to the deletion of the
28 oxygen atom from the formula for Crystal Y.

1   Furthermore, the prohibition on new matter found in 35 U.S.C. § 132 and 35
2   U.S.C. § 255 applies with equal force to the rewriting of the specification and the
3   claims to double the number of fluorine atoms and chlorine atoms.
4   Still further, the purported correction made by Kunbargi is not, contrary to
5   Kunbargi's argument, the only way that the claims could be rewritten to balance
6   the positive and negative charges of the calcium and fluorine atoms. Rather than
7   subtracting any oxygen atom, the claims could have been rewritten to add a
8   calcium atom which would have a charge of plus 2 to balance the charges of two
9   fluorine atoms each having a charge of minus 1. The specification of the '684
10  Patent provides absolutely no guidance as to either purported correction neither of
11  which has any support in the specification.

### C. It Is Not True That The "Corrected" Formula For Crystal Y Has A Total Molecular Weight of 1003.

14  The total molecular weight of the "corrected" formula for Crystal Y is
15  955.25, not 1003. The Adams Declaration pulls the number 1003 out of thin air
16  and offers no support for it.
17  The molecular weight of a composition is determined by adding the atomic
18  weights of each of the constituents of the composition. In the present case, the
19  molecular weights of the atoms found in the formula for Crystal Y are as follows:
20  calcium = 40.8, silicon = 28.09, oxygen = 16, sulfur = 32.06 and fluorine = 19.
21  The atomic weight an atom can be readily determined from the periodic table
22  of elements. The periodic table of elements is a recognized reference source and
23  we request that the Court take judicial notice of the periodic table. To assist the
24  Court, a copy of the periodic table as found in *Webster's Third New International*
25  *Dictionary* is attached as Exhibit A to the Second Geriak Declaration.
26  Determination of the molecular weight of a composition is a matter of simple
27  arithmetic. One simply multiplies the number of atoms of a given element by the
28  atomic weight of that element and then adds the weights of the various elements in

1 the composition.

2 In the present case, the "corrected" formula for Crystal Y is $C_9S_3\bar{S}_3Ca(f\,cl)_2$.
3 Written in conventional terminology, this translates to 9 molecules of CaO, 3
4 molecules of $SiO_2$, 3 molecules of $SO_3$, 1 atom of calcium and 2 atoms of fluorine.
5 To simplify, 9 molecules of CaO equals 9 atoms of calcium (Ca) and 9 atoms of
6 oxygen (O), 3 molecules of $SiO_2$ equals 3 atoms of silicon (Si) and 6 atoms of
7 oxygen (O), 3 molecules of $SO_3$ equals 3 atoms of sulfur (S) and 9 atoms of oxygen
8 (O), Ca equals 1 atom of calcium and $f_2$ equals 2 atoms of fluorine. If we add these
9 up, we get 10 atoms of Ca, 3 atoms of Si, 3 atoms of S, 21 atoms of 0 and 2 atoms
10 of fl. The multiplication of each number of atoms by its atomic weight is shown
11 below. If we multiply the atomic weight of each element by its number of atoms in
12 the "corrected" formula for Crystal Y, we get:

| Ca | 10 x 40.08 = | 400.80 |
| Si | 3 x 28.09 = | 84.27 |
| S | 3 x 32.06 = | 96.18 |
| O | 21 x 16.00 = | 336.00 |
| F | 2 x 19.00 = | 38.00 |
| Total | | 955.25 |

As shown above, the total molecular weight of the "corrected" formula for Crystal Y is **955.25, not 1003**. If 955.25 is divided by 38 (which calculation, as we show below is based on another false premise), the result is **25.1, not 26.5**. Thus, Plaintiffs entire argument with regard to the "correction" of the formula for Crystal Y is false and collapses of its own weight.

To restate, when the number of atoms times their atomic weight are added up, the total molecular weight of the "corrected" formula for Crystal Y is **955.25, not 1003**. In turn, this means that when the true total molecular weight of the

1  corrected formula for Crystal Y is divided by 38, the result is 25.1, not, as Plaintiffs
2  and Mr. Adams would have it, 26.5.  Thus, the entire cornerstone argument of the
3  Opposition, namely that some significance attaches to the statement at column 10,
4  line 8 of the '684 Patent that "Y equals 26.5f" is fallacious and is a
5  misrepresentation.  This, of course, means that the entire argument relating to the
6  "correction" of the formula for Crystal Y is specious and should be disregarded.

### 1. The False Premise Regarding "Y=26.5f."

In the foregoing discussion, we demonstrate that the premise that the total molecular weight of "corrected" formula for Crystal Y is 1003 is false.  There is a second false premise, namely, that "Y=26.5f" contains some indication that the total molecular weight of Crystal Y should be divided by 38, i.e., by twice the atomic weight (19) of an atom of fluorine.  This is false because "Y=26.5f" must be taken to mean, if it means anything at all, that Y=26.5 x 19 which equals 503.5, which is a far cry from the imaginary number of 1003 put forth by Plaintiffs and Adams as the total molecular weight of the rewritten formula for Crystal Y.[1]

Stated differently, in order for Plaintiffs' fallacious argument that the total molecular weight of Crystal Y should be divided by 38, "Y=26.5f" would have to read "Y=26.5$f_2$."  If Kunbargi had attempted such rewriting of the specification in his Second Request for Certificate of Correction, it would have been a flagrant and conspicuous attempt to add new matter.

### 2. The Disclosure Involving "Y=26.5f" Is Directed To Raw Materials Not The Finished Product.

Immediately before the statement "Y=26.5f", the '684 specification puts this statement into context and states at col. 10, lines 5-9:

> "….the following ratios can be utilized in accordance with teachings of the present invention to **design the exemplary raw material mix**.
>
> The amount of Y=26.5f."  (emphasis added)

---

[1] Indeed, even if 26.5 is multiplied by 38, the result is 1007, not 1003.

Thus, "Y=26.5f" has nothing to do with the formula for Crystal Y, bur rather has only to do with the "raw material mix" which is burned in the kiln.

### D. Obviousness Is The Wrong Legal Standard By Which To Test For New Matter.

Plaintiffs argue endlessly, e.g., at page 2, lines 8, 25 and 27, page 3, line 26, page 4, lines 19-20, page 12, line 28, page 13, lines 7 and 23 and page 15, line 5, that the purported correction to the formula for Crystal Y would be "obvious to one skilled in the art." This is the wrong legal standard to test for new matter and to test for support in the specification.

As held in *Lockwood v. American Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997) support for a limitation in a claim cannot be based on the notion of obviousness. Accord, *Lucent Technologies, Inc. v. Gateway, Inc.,* 543 F.3d 710, 719 (Fed Cir. 2008). In order for support to exist, it must be found in the language of the specification without resort to obviousness.

### E. Miscellaneous Items Worthy Of Note.

#### 1. There was no "misprint" of the formula for Crystal Y in the '684 Patent.

Plaintiffs repeatedly characterize, e.g., at page 2, line 13, page 3, line 26, page 6, line 12, page 9 line 6, page 11, line 1, page 13, line 22 and page 14, line 20, the formula for Crystal Y as it appears in the '684 Patent as a "misprint". The definition of "misprint" is, as set forth in *Webster's New World Dictionary* attached as Exhibit B to the Second Geriak Declaration, "an error in printing." There was no error in printing by the Patent and Trademark Office in the '684 Patent. The patent was printed just as the application was written. It is submitted that the repeated use of the word "misprint" by Plaintiffs is a tactic to trivialize the nature of the rewriting of the formula for Crystal Y and that, far from correcting a misprint, what Kunbargi did in the Certificate of Correction was to make a substantial and material change to the formula for Crystal Y which improperly introduced new matter.

### a. The intent of the patent applicant is irrelevant.

In the Request for Second Certificate of Correction attached as Exhibit C to the first Geriak Declaration, Kunbargi stated, at page 2, second full paragraph, "The Applicant intended to use the abbreviation 'Ca'", rather than what he did use, mainly the cement designation "C" which is CaO (calcium oxide, not calcium). As held in *Superior Fireplace Co. v. Majestic Products Co.*, 270 F.3d 1358, 1375 (Fed. Cir. 2001):

> "No inquiry as to the subjective intent of the applicant or PTO is appropriate or even possible in the context of a patent infringement suit. … Thus, Superior's suggestion that we compare claim scope by considering what was 'intended' by the parties rather than construing the claims for what they actually recite, is completely without merit."

### b. $H_3O$ is a known composition

At page 6, lines 18-20 and page 14, lines 13-15 of the Opposition, and at paragraph 32 of the Adams Declaration, Plaintiffs and Adams make the erroneous statement that if a formula "were written $H_3O$, the reader (and any chemist) would recognize this was a misprint." This is plainly not true. The formula $H_3O$ stands for hydronium, a well-known ionic composition. This definition appears at page 662 of *Webster's New World Dictionary* attached as Exhibit B to the Second Geriak Declaration, in the page from the on-line *Merriam Webster Dictionary* attached as Exhibit C to the Second Geriak Declaration, and is further discussed at the extract from the UC Davis Physical Chemistry Curriculum attached as Exhibit D to the Second Geriak Declaration.

While the existence or non-existence of hydronium is not directly relevant to the present Motion, the misstatements by the Plaintiffs and Adams with regard to its existence demonstrate, to put it mildly, or lack of care in presenting their position. This is all the more so when it is considered that Footnote 2 to Defendants' Opening Brief pointed out the fact that $H_3O$ does exist and is known as hydronium.

### F. Plaintiffs' Statement Regarding The Undisputed Facts Admits That They Are Undisputed.

Plaintiffs' statement admits, in paragraph 1, states "Undisputed that the certificate of correction corrected (sic) the formula." Plaintiffs do not, and cannot, deny that new matter was added. The remainder of the Statement attempts to justify the rewriting of the formula by erroneously referring to the formula as originally set forth in the '684 patent as a "misprint" in all of paragraphs 1-6. There is no misprint here, as demonstrated above.

More importantly, paragraph 4 of the Statement says that "The correction is obvious from the specification." As demonstrated above, this is the wrong legal standard and the resort to obviousness is an admission that new matter was added.

The so-called "Additional Facts" set forth in the Statement are a rehash of the Adams Declaration which, for the reasons stated above, has zero credibility and is not only false, but is a misrepresentation.

### III. THE CERTIFICATE OF CORRECTION IS INVALID AND THE CLAIMS ARE INVALID

For the reasons stated above, the Certificate of Correction dated July 24, 2001 was improperly granted and its grant was an abuse of discretion by the PTO. This means that the claims of the '684 Patent now stand as they did before the Certificate. Plaintiffs have admitted that the pre-Certificate claims are invalid.

At page 10, lines 2-3, of the Opposition, Plaintiffs state:

> "The original formula could have been interpreted in **several different ways, all ambiguous**." (emphasis added)

Adams says the same ting in paragraph 40 of his Declaration.

At page 14, line 26, Plaintiffs further admit that the pre-Certificate claims recite a "nonexistent compound."

The law is clear, claims which are "insolubly ambiguous are indefinite," *Haemonetics Corp. v. Baxter Healthcare Corp.,* 607 F.3d 776, 783 (Fed. Cir.

1  2010), citing to *Halliburton Energy Services, Inc. v. M-I LLC*, 517 F.3d 1244, 1249
2  (Fed. Cir. 2008).
3      Furthermore, Plaintiffs cannot ask this Court to interpret the original claims
4  in a manner which would cure their drafting errors. As held in *Hoganas AB v.*
5  *Dresser Industries, Inc.,* 9 F.3d 948, 951 (Fed. Cir. 1993):
6      "It would not be appropriate for us now to interpret the claim differently just to cure a drafting error. That would
7  unduly interfere with the function of claims in putting
8  competitors on notice of the scope of the claimed invention."
9      The foregoing statement from *Hoganas* was quoted with approval in
10  *Haemonetics* at 607 F.3d 783.
11      Thus, the applicable law establishes that Plaintiffs have admitted that the
12  original claims in the '684 Patent are invalid and this Court should rule accordingly.

13  **IV. CONCLUSION**
14      The rewriting of the claims and specification in the Certificate of Correction
15  dated July 24, 2001, plainly violates the prohibition on the introduction of new
16  matter set forth in 35 U.S.C. § 255. It also violates the same prohibition set forth in
17  35 U.S.C. § 132.
18      The result is that the Certificate of Correction is invalid and the claims and
19  specification of the '684 revert to their pre-Certificate form. Plaintiffs have
20  admitted that the pre-Certificate claims are insolubly ambiguous and recite a
21  nonexistent compound. Thus, the pre-Certificate claims are admitted by Plaintiffs
22  to be invalid by reason of indefiniteness.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: November 12, 2010 | Respectfully submitted, |
| 3 | | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 4 | | |
| 5 | | By:  s/James W. Geriak |
| 6 | | James W. Geriak<br>Kurt T. Mulville |
| 7 | | Thomas J. Gray |
| 8 | | Richard C. Leonard<br>LEONARD, DICKER & SCHREIBER |
| 9–13 | | Attorneys for Defendant and Counterclaimant CTS Cement Manufacturing Corporation and Defendants Rapid Set Products Co.; CTS Bulk Terminals Co.; Chem-Comp Systems, Inc.; Edward K. Rice; Lawrence B. Collins; Blue Daisy Cement Products, Inc.; Ryan Vanderhook, Sr.; Short Load Concrete, Inc.; Sir-Mix Concrete Products, Inc.; White Cap Industries, Inc.; Grupo Cementos de Chihuahua; and The Quikrete Companies |